IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CRUCITA WHITE,                                    07-CV-1772-BR

       Plaintiff,                           OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

       Defendant.


BRUCE W. BREWER
Law Offices of Bruce W. Brewer, P.C.
419 Fifth Street
Oregon City, OR  97045
(503) 722-8833

       Attorneys for Plaintiff

KARIN J. IMMERGUT
United States Attorney
BRITANNIA I. HOBBS
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1053


1   -  OPINION AND ORDER

**DAVID MORADO**
Office of the General Counsel
**LEISA A. WOLF**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-2545

          Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which he denied Plaintiff's application for Disability Insurance Benefits (DIB) and found Plaintiff ineligible for Supplemental Security Income (SSI) payments under Titles II and XVI of the Social Security Act.  This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a thorough review of the record, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.


### ADMINISTRATIVE HISTORY

     Plaintiff filed her applications for DIB and SSI on July 15, 2003, alleging an onset date of August 31, 2001.

Tr. 41, 82.[1]  The applications were denied initially and on reconsideration.  Tr. 41, 42, 52, 677.   An Administrative Law Judge (ALJ) held a hearing on May 24, 2006.  Tr. 22.  At the hearing, Plaintiff was represented by an attorney.  Plaintiff and a vocational expert (VE) testified at the hearing.

Plaintiff previously has been granted a closed period of disability from August 31, 2001, to January 1, 2003.  Tr. 22. Accordingly, the period under consideration by the ALJ was the period commencing January 2, 2003.  Tr. 22.  The ALJ issued an opinion on June 1, 2006, in which he found Plaintiff is not disabled and, therefore, is not entitled to benefits.  Tr. 22-32. That decision became the final decision of the Commissioner on October 1, 2007, when the Appeals Council denied Plaintiff's request for review.  Tr. 6.

## BACKGROUND

Plaintiff was 52 years old at the time of the hearing. Tr. 908.  She has a high-school education and has taken some college courses.  Tr. 92-93, 908.  Plaintiff has previously worked as a program coordinator, data-entry person, customer-service representative, accounting clerk, and assistant apartment manager.  Tr. 92-93.

_____

[1] Citations to the official transcript of record filed by the Commissioner on June 26, 2008, are referred to as "Tr."

3  -  OPINION AND ORDER

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence.  After reviewing the medical records, this Court adopts the ALJ's summary of the medical evidence.  *See* Tr. 24-31.

## STANDARDS

The initial burden of proof rests on the claimant to establish disability.  *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005).  To meet this burden, a claimant must demonstrate her inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  The Commissioner bears the burden of developing the record.  *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g).  *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).  Substantial evidence means more than a mere scintilla, but less than a preponderance, *i.e.*, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v.*

*Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001). The court must weigh all of the evidence whether it supports or detracts from the Commissioner's decision. *Robbins,* 466 F.3d at 882. The Commissioner's decision must be upheld even if the evidence is susceptible to more than one rational interpretation. *Webb v. Barnhart*, 433 F.3d 683, 689 (9th Cir. 2005). The court may not substitute its judgment for that of the Commissioner. *Widmark v. Barnhart*, 454 F.3d 1063, 1070 (9th Cir. 2006).

## DISABILITY ANALYSIS

### The Regulatory Sequential Evaluation

The Commissioner has developed a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). *See also* 20 C.F.R. §§ 404.1520, 416.920. Each step is potentially dispositive.

In Step One, the claimant is not disabled if the Commissioner determines the claimant is engaged in substantial gainful activity. *Stout v. Comm'r Soc. Sec. Admin.*,

5   -   OPINION AND ORDER

454 F.3d 1050, 1052 (9th Cir. 2006). *See also* 20 C.F.R.
§§ 404.1520(a)(4)(i), 416.920(a)(4)(i).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments. *Stout*, 454 F.3d
at 1052. *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of a
number of listed impairments that the Commissioner acknow-
ledges are so severe as to preclude substantial gainful
activity. *Stout*, 454 F.3d at 1052. *See also* 20 C.F.R.
§§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). The criteria for
the listed impairments, known as Listings, are enumerated in
20 C.F.R. part 404, subpart P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
determine the claimant's RFC, which "is an assessment of the
sustained, work-related physical and mental activities" that the
claimant can still do "on a regular and continuing basis" despite
his limitations. 20 C.F.R. § 404.1520(e). *See also* Soc. Sec.
Ruling (SSR) 96-8p. A 'regular and continuing basis' means
8 hours a day, for 5 days a week, or an equivalent schedule."
SSR 96-8p, at *1. In other words, the Social Security Act does

not require complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d 1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's RFC is at the heart of Steps Four and Five of the sequential analysis engaged in by the ALJ when determining whether a claimant can still work despite severe medical impairments.  An improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'" SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work she has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can do. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2.

If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## **ALJ'S FINDINGS**

At Step One, the ALJ found Plaintiff has not engaged in any substantial gainful activity since her alleged onset date. Tr. 24.

At Step Two, the ALJ found Plaintiff has the severe impairments of degenerative disc disease of the cervical spine and "status/post left breast cancer and chemotherapy/radiation therapy."  Tr. 24.  The ALJ found Plaintiff did not have any severe mental impairments.  Tr. 24-25.

At Step Three, the ALJ found Plaintiff does not have an impairment or a combination of impairments that meets or equals a Listing.  Tr. 27.  The ALJ assessed Plaintiff's RFC and found she can perform light exertion work.  Specifically, the ALJ found Plaintiff can occasionally lift and carry up to 20 pounds; can frequently lift and carry up to ten pounds; can sit, stand, or walk for about six hours in an eight-hour workday; and does not have any limitations in pushing or pulling.  Tr. 27.

At Step Four, the ALJ, based on the VE's responses to the ALJ's hypothetical, found Plaintiff is capable of performing her past relevant work as a program coordinator, data-entry person,

customer-service representative, accounting clerk, or assistant
apartment manager.  Tr. 32.  The ALJ, therefore, concluded
Plaintiff is not disabled and, therefore, is not entitled to
benefits.  Tr. 32.


## <u>DISCUSSION</u>

Plaintiff contends the ALJ erred when he (1) did not find at
Step Two that Plaintiff's mental impairments were severe
impairments; (2) rejected the opinions of Donald Lange, Ph.D.;
Christina Nicolaidis, M.D.; Michael Hammond, M.D.; and Licensed
Clinical Social Worker (LCSW) Yvonne Rice; (3) found Plaintiff's
testimony was not entirely credible; and (4) rejected the
lay-witness testimony of Pamela Johnson, all of which resulted in
the ALJ posing an inadequate hypothetical to the VE at Step Four.

**I.    Severity of Plaintiff's mental impairments at Step Two.**

Plaintiff contends the ALJ erred when he did not find at
Step Two that any of Plaintiff's mental impairments were severe.

A severe impairment "significantly limits" a claimant's
"physical or mental ability to do basic work activities."  20
C.F.R. § 404.1521(a).  *See also Ukolov*, 420 F.3d at 1003.  The
ability to do basic work activities is defined as "the abilities
and aptitudes necessary to do most jobs."  20 C.F.R. §§
404.1521(a), (b).  Such abilities and aptitudes include walking,

standing, sitting, lifting, pushing, pulling, reaching, carrying,

handling, seeing, hearing, speaking; understanding, carrying out,

and remembering simple instructions; using judgment; responding

appropriately to supervisors, co-workers, and usual work

situations; and dealing with changes in a routine work setting.

*Id.*

The Step Two threshold is low.  "[A]n impairment can be

considered as not severe only if it is a slight abnormality which

has such a minimal effect on the individual that it would not be

expected to interfere with the individual's ability to

work . . . .  [T]he severity regulation is to do no more than

allow the Secretary to deny benefits summarily to those

applicants with impairments of a minimal nature which could never

prevent a person from working."  SSR 85-28, at *2 (Nov. 30,

1984)(internal quotations omitted).  The Ninth Circuit describes

Step Two as a "*de minimus* screening device to dispose of

groundless claims."  *Smolen*, 80 F.3d at 1290.  *See also Webb v.

Barnhart*, 433 F.3d 683, 686-88 (9th Cir. 2005).  "Great care

should be exercised in applying the not severe impairment

concept."  SSR 85-28, at *4.

The ALJ found Plaintiff's alleged mental impairments were

"not significant" on the grounds that a behavioral health

assessment dated September 17, 2002, reflected Plaintiff

responded well to counseling.  The ALJ also relied on the fact

that Heidi Jolson, a Certified Alcohol and Drug Counselor (CADC),

assigned Plaintiff a GAF[2] score of 65, which suggests only

moderate symptoms.  The ALJ, however, must use "evidence from

acceptable medical sources to establish [claimant's] medically

determinable impairment[s]."  20 C.F.R. §§ 404.1513(a),

416.913(a).  Counselors are not "acceptable medical sources."

SSR 06-03p, at *2.  Accordingly, CADC Jolson's opinion as to

Plaintiff's GAF score is not a suitable basis for determining

whether Plaintiff's mental impairments are severe.

The ALJ also found Plaintiff's mental impairments are not

severe on the ground that she frequently failed to report for or

cancelled her appointments for treatment with Dr. Hammond and

CADC Jolson, which the ALJ interpreted as a failure to pursue

treatment.  The record reflects, however, that Dr. Lange opined

Plaintiff's attention level, mental control, efficiency, and

mental processing "wax and wane."  Tr. 249.  That opinion is

_____

[2] The GAF scale is used to report a clinician's judgment of
the patient's overall level of functioning on a scale of 1 to
100.  A GAF of 41-50 indicates serious symptoms (suicidal
ideation, severe obsessional rituals, frequent shoplifting) or
any serious impairment in social, occupational, or school
functioning (*e.g.*, few friends, unable to keep a job).  A GAF of
51-60 indicates moderate symptoms (*e.g.*, flat affect and
circumstantial speech, occasional panic attacks) or moderate
difficulty in social, occupational, or school functioning (*e.g.*,
few friends, conflicts with peers or co-workers).  *Diagnostic and
Statistical Manual of Mental Disorders IV* (DSM-IV) 31-34 (4th ed.
2000).

consistent with the opinion of Dr. Hammond, whose treatment notes reflect Plaintiff has bipolar episodes characterized by repeated improvement of symptoms when she reports for treatment and takes her medication followed by episodes of depression when she cancels or fails to report for her appointments.  Tr. 600-54, 804-901.  In other words, Plaintiff's positive responses to treatment followed by her failure to continue treatment are consistent with her mental impairments.

The ALJ also relied on the opinions of Frank Lahman, Ph.D., and Dorothy Anderson, Ph.D., reviewing physicians who performed evaluations at the request of DDS on October 31, 2003, and April 15, 2004.  Based on these opinions, the ALJ concluded Plaintiff did not have any severe medically determinable mental impairments.  The opinions of reviewing physicians Drs. Lahman and Anderson that Plaintiff does not have any severe medically determinable mental impairments are not consistent with the opinions of Dr. Nicolaidis, a treating physician, and Dr. Lange, an examining physician, and the treatment notes of Dr. Hammond, a treating physician, regarding Plaintiff's mental impairments. The "opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Lester*, 81 F.3d at 831.  Thus, based on the opinions of Plaintiff's treating and examining physicians, Plaintiff's

12  -  OPINION AND ORDER

mental impairments are more than "slight abnormalit[ies] which ha[ve] such a minimal effect on the individual that [they] would not be expected to interfere with the individual's ability to work." SSR 85-28, at *2.

On this record, the Court concludes the ALJ erred when he did not find at Step Two that any of Plaintiff's mental impairments were severe impairments because the ALJ did not give legally sufficient reasons supported by the record for doing so.

## II.  Physicians' opinions.

Plaintiff contends the ALJ erred when he rejected the opinions of Drs. Lange, Nicolaidis, and Hammond and LCSW Rice as to Plaintiff's mental impairments and limitations.

An ALJ may reject an examining or treating physician's opinion when it is inconsistent with the opinions of other treating or examining physicians if the ALJ makes "findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." *Thomas*, 278 F.3d at 957 (quoting *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989)).  When the medical opinion of an examining or treating physician is uncontroverted, however, the ALJ must give "clear and convincing reasons" for rejecting it.  *Thomas*, 278 F.3d at 957.  *See also Lester*, 81 F.3d at 830-32.

A nonexamining physician is one who neither examines nor treats the claimant.  *Lester*, 81 F.3d at 830.  "The opinion of a

13  -  OPINION AND ORDER

nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." *Id.* at 831.  When a nonexamining physician's opinion contradicts an examining physician's opinion and the ALJ gives greater weight to the nonexamining physician's opinion, the ALJ must articulate his reasons for doing so. *See, e.g., Morgan v. Comm'r of Soc. Sec. Admin*, 169 F.3d 595, 600-01 (9th Cir. 1999).  A nonexamining physician's opinion can constitute substantial evidence if it is supported by other evidence in the record.  *Id.* at 600.

**A.    Dr. Lange.**

On November 24, 2003, Dr. Lange, an examining physician, conducted a comprehensive neuropsychological evaluation of Plaintiff at the request of DDS.[3]  Tr.  243.  Dr. Lange diagnosed Plaintiff with major depressive disorder with anxious and somatoform symptoms and mixed personality disorder with narcissistic and depressive traits.  Tr.  251.  Dr. Lange also reported Plaintiff had generally average to above-average performance on most cognitive and intellectual tasks.  Tr. 245.

The ALJ found this portion of Dr. Lange's opinion was consistent with other medical evidence in the record and, based

---

[3] Disability Determination Services (DDS) is a federally funded state agency that makes eligibility determinations on behalf and under the supervision of the Social Security Administration pursuant to 42 U.S.C. § 421(a) and 20 C.F.R. § 416.903.

on Dr. Lange's opinion, concluded Plaintiff's mental impairments
were not severe impairments.

The ALJ, however, failed to address a significant portion of
Dr. Lange's opinion.  Tr. 26.  For example, Dr. Lange stated
Plaintiff's attention level, mental control, efficiency, and
mental processing "wax and wane."  Tr. 249.  Dr. Lange also
stated Plaintiff has psychological stress reactions and somatic
complaints that could result in excessive sick time when
confronted with a significant psychic crisis.  Tr.  252.
Dr. Lange reported Plaintiff's mental impairments cause her to
avoid stress by avoiding work, and that she may give up easily
when frustrated.   In addition, he noted Plaintiff is
"hypersensitive [to] issues of control."  Tr. 253.  Dr. Lange
found these issues would present significant problems for
Plaintiff with employment.  Tr. 253.  He opined Plaintiff would
likely be able to work at least part-time with ongoing treatment,
but he cautioned Plaintiff would require a "fairly supportive
position with a well-coached [and] understanding supervisor"
because she could very easily "blow out."  Tr. 253.  Dr. Lange
also opined Plaintiff should work for both economic and
therapeutic reasons, but he stated she would require relatively
routine employment with minimal interpersonal demands.  Tr. 253.
As noted, the ALJ did not address this portion of Dr. Lange's
opinion.

On this record, the Court concludes the ALJ erred when he failed to consider a significant part of Dr. Lange's opinion because the ALJ did not give legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.  Dr. Nicolaidis.**

Dr. Nicolaidis treated Plaintiff for chronic pain management.  In a September 21, 2005, chart note, Dr. Nicolaidis noted Plaintiff's history of bipolar disorder and remarked Plaintiff had reported worsening symptoms.  Tr. 700. Dr. Nicolaidis stated she was counseling Plaintiff for depression and post-traumatic stress disorder (PTSD) and that Plaintiff was displaying significant symptoms of depression during this visit. Tr. 700.

The ALJ rejected Dr. Nicolaidis's opinion as to the presence and severity of Plaintiff's mental impairments on the grounds that it was based on Plaintiff's subjective complaints and that Dr. Nicolaidis, who is not a psychologist or psychiatrist, was not treating Plaintiff for mental-health symptoms.  An ALJ may reject a physician's opinion if it is based entirely on the claimant's subjective complaints and not supported by clinical evidence in the record.  *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005).  "[Q]uestioning the credibility of the patient's complaints where the doctor does not discredit those complaints and supports [her] ultimate opinion with [her] own observations,"

is not, however, a legally sufficient reason for rejecting a physician's opinion. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1199-1200 (9th Cir. 2008).

Here Dr. Nicolaidis was treating Plaintiff for chronic pain at Oregon Health Sciences University (OHSU) and had access to Plaintiff's other OHSU records, including notations by her other treating physicians regarding her depression, anxiety, and bipolar disorder. Tr. 288, 295, 306, 324-25, 365, 368, 370, 691. In addition, Dr. Nicolaidis was aware Plaintiff was undergoing treatment in the form of medication and counseling. Tr. 690. Dr. Nicolaidis noted a correlation between Plaintiff's chronic pain and her mental-health issues and, therefore, accepted as credible Plaintiff's subjective complaints. Tr. 689, 699, 701. In addition, Dr. Nicolaidis encouraged Plaintiff to continue with her mental-health treatment as part of Plaintiff's chronic pain management. Tr. 689, 699, 701.

The ALJ also rejected the opinion of Dr. Nicolaidis on the ground that Dr. Nicolaidis is not a psychologist or psychiatrist and was not treating Plaintiff's mental health symptoms. A treating physician, however, "is qualified to give a medical opinion as to [a claimant's] mental state as it relates to her physical disability even though [the treating physician] is not a psychiatrist." *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987). As noted, Dr. Nicolaidis reported in her treatment notes

17  -  OPINION AND ORDER

that there was a correlation between Plaintiff's chronic pain and her mental-health issues.  Tr. 689, 699, 701.  For example, in a chart note dated June 8, 2005, Dr. Nicolaidis stated Plaintiff's chronic pain had "worsened due to a variety of psychological factors, including her . . . depression and PTSD."  Tr. 689.

On this record, the Court concludes the ALJ erred when he rejected Dr. Nicolaidis's opinion as to the presence and severity of Plaintiff's mental impairments because the ALJ did not give legally sufficient reasons supported by substantial evidence in the record for doing so.

**C.   Dr. Hammond.**

On October 27, 2005, Dr. Hammond completed a mental RFC assessment of Plaintiff at the request of her attorney.  Tr. 602. Dr. Hammond opined Plaintiff has "sustained and significant" limitations in concentration, attention, and memory that would likely cause her difficulty in performing consistently at work. Tr. 601-02.  Dr. Hammond also stated Plaintiff's mental impairments would likely cause her to miss one or two days of work per month on average.  Tr. 601-02.

The ALJ rejected the mental RFC assessment of Dr. Hammond because, among other things, the ALJ found the limitations identified by Dr. Hammond were inconsistent with his treatment notes.  An ALJ may reject a treating physician's opinion if it is inconsistent with his treatment notes.  *Weetman v. Sullivan*, 877

F.2d 20, 22-23 (9th Cir. 1989).  Dr. Hammond's treatment notes
reflect Plaintiff has bipolar episodes characterized by repeated
improvement of symptoms when Plaintiff reports for treatment and
takes her medication followed by episodes of depression when she
cancels or fails to report for her appointments.  Tr. 600-54,
804-901.  Tr. 600-54, 804-901.  Dr. Hammond's notes, however, do
not reflect he believed Plaintiff's limitations would prevent her
from sustaining employment.  On the contrary, Dr. Hammond and
Plaintiff discussed her employment prospects in nearly every
session.  Dr. Hammond even worked directly with Plaintiff's
vocational rehabilitation counselor several times.  Dr. Hammond
consistently encouraged Plaintiff to find stable employment
because he believes her depression is related at least in part to
her lack of employment.  Tr. 608-09, 612, 614, 618, 621, 625,
629, 633, 637, 844, 862, 878, 886-87.

On this record, the Court concludes the ALJ did not err when
he rejected Dr. Hammond's mental RFC assessment because the ALJ
gave legally sufficient reasons supported by substantial evidence
in the record for doing so.

**D.   LCSW Rice.**

LCSW Rice, who worked with Dr. Hammond, wrote a letter dated
January 14, 2004, in which she stated Plaintiff is unemployable
because of her bipolar disorder.  Tr. 606.  The ALJ attributed
this opinion to Dr. Hammond and rejected it on the ground that it

is inconsistent with Dr. Hammond's treatment notes.

Medical sources are divided into two categories:
"acceptable" and "not acceptable."  20 C.F.R. § 416.902.
Acceptable medical sources include licensed physicians and
psychologists.  20 C.F.R. § 416.902.  Medical sources classified
as "not acceptable" include, but are not limited to, nurse
practitioners, therapists, licensed clinical social workers, and
chiropractors.  SSR 06-03p, at *2.  LCSW Rice is not an
"acceptable medical source."

The Social Security Administration notes:

> With the growth of managed health care in
> recent years and the emphasis on containing
> medical costs, medical sources who are not
> acceptable medical sources, such as nurse
> practitioners, physician assistants, and
> licensed clinical social workers, have
> increasingly assumed a greater percentage of
> the treatment and evaluation functions
> previously handled primarily by physicians
> and psychologists.  Opinions from these
> medical sources, who are not technically
> deemed acceptable medical sources under our
> rules, are important and should be evaluated
> on key issues such as impairment severity and
> functional effects, along with the other
> relevant evidence in the file.

SSR 06-03p, at *3.  Factors the ALJ should consider when
determining the weight to give an opinion from those "important"
sources include:  the length of time the source has known the
claimant and the number of times and frequency that the source
has seen the claimant; the consistency of the source's opinion
with other evidence in the record; the relevance of the source's

20  -  OPINION AND ORDER

opinion; the quality of the source's explanation of his opinion; and the source's training and expertise.  SSR 06-03p, at *4.  On the basis of the particular facts and the above factors, the ALJ may assign a "not-acceptable medical source" either greater or lesser weight than that of an acceptable medical source. SSR 06-03p, at *5-*6.  The ALJ, however, must explain the weight assigned to such sources to the extent that a claimant or subsequent reviewer may follow the ALJ's reasoning.  SSR 06-03p, at *6.

The ALJ did not treat LCSW Rice's opinion as that of an acceptable medical source but instead evaluated her opinion as if it were the opinion of Dr. Hammond, an acceptable medical source. Nevertheless, the ALJ rejected the opinion of LCSW Rice because it was inconsistent with Dr. Hammond's treatment notes.  Whether LCSW Rice's opinion is treated as the opinion of a "not-acceptable medical source" or the opinion of Dr. Hammond, the Court finds it is inconsistent with Dr. Hammond's treatment notes, which is a sufficient reason to reject the opinion.  As noted, the record reflects Dr. Hammond consistently encouraged Plaintiff to find stable employment because her depression is related at least in part to her lack of employment.  Tr. 608-09, 612, 614, 618, 621, 625, 629, 633, 637, 844, 862, 878, 886-87.

On this record, the Court concludes the ALJ did not err when he rejected LCSW Rice's opinion that Plaintiff is

unemployable because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for doing so.

**III. Plaintiff's testimony.**

Plaintiff contends the ALJ erred when he did not find her testimony and other statements entirely credible.

In *Cotton v. Bowen,* the Ninth Circuit established two requirements for a claimant to present credible symptom testimony:  The claimant must produce objective medical evidence of an impairment or impairments, and she must show the impairment or combination of impairments could reasonably be expected to produce some degree of symptom.  *Cotton*, 799 F.2d 1403 (9th Cir. 1986), *aff'd in Bunnell v. Sullivan*, 947 F.2d 341 (9th Cir. 1991).  The claimant, however, need not produce objective medical evidence of the actual symptoms or their severity.  *Smolen*, 80 F.3d at 1284.

If the claimant satisfies the above test and there is not any affirmative evidence of malingering, the ALJ can reject the claimant's pain testimony only if he provides clear and convincing reasons for doing so.  *Parra v. Astrue,* 481 F.3d 742, 750 (9th Cir. 2007)(citing *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)).  General assertions that the claimant's testimony is not credible are insufficient.  *Id*.  The ALJ must identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester*, 81

F.3d at 834).

On September 21, 2003, Plaintiff completed a report on her activities of daily living in which she stated she cares for herself, cooks her own meals, completes household chores, manages her own finances, shops once each month, and goes to church. Tr. 118-24.

On September 30, 2003, Plaintiff completed a pain questionnaire form on which she stated she constantly experiences burning, aching, and stinging pain in her left upper arm, left hip and leg, right breast, and back that is worsened by repetitive motion or standing for long periods of time. Tr. 125. She reported she takes ibuprofen and aspirin to alleviate the pain. Tr. 126. Plaintiff also stated she needs to rest after two or three hours of activity and cannot complete tasks. Tr. 126.

At the hearing before the ALJ, Plaintiff testified her bipolar disorder causes her to have unpredictable mood swings, fatigue, racing thoughts, and difficulty sleeping. Tr. 914. She stated she becomes disoriented, forgetful, and hyperactive when she is experiencing a manic episode. Tr. 921. Plaintiff also stated she "shuts down totally" and is not interested in anything, including eating, during depressive episodes. Tr. 922.

The ALJ did not determine Plaintiff was malingering, so the ALJ was required to provide clear and convincing reasons for

23  -  OPINION AND ORDER

rejecting Plaintiff's subjective pain testimony.  *Lester*, 81 F.3d
at 834.  The ALJ found Plaintiff's impairments could reasonably
be expected to produce some degree of symptom, but Plaintiff's
statements as to the intensity, duration, and limiting effects of
those symptoms were not entirely credible.  Tr. 29.

   **A.  Physical impairments.**

   The ALJ found Plaintiff's testimony as to her physical
impairments was not entirely credible because, among other
things, it was not fully supported by the medical record.  An ALJ
may reject a claimant's testimony if it is inconsistent with the
medical record as long as the ALJ makes "'specific findings
justifying a decision to disbelieve an allegation ... and those
findings are supported by substantial evidence in the record.'"
*Morgan v. Comm'r*, 169 F.3d 595, 600 (9th Cir. 1999)(quoting *Fair
v. Bowen*, 885 F.2d 597, 603 (9th Cir.1989)).

   Here the ALJ found the medical record does not reflect
Plaintiff's degenerative disc disease or status post-breast
cancer limits her to less than light exertion work.  Tr. 29, 667.
For example, Charles Petrunin, M.D., reported on August 13, 2002,
there was not any evidence that Plaintiff's breast cancer was
recurring.  Tr. 363.  On May 30, 2003, Carol Marquez, M.D., noted
Plaintiff was doing well in her post-cancer status.  Tr. 348.  On
September 15, 2004, Craig Nichols, M.D., reported Plaintiff was
functioning well.  Tr. 298.

24  -  OPINION AND ORDER

On this record, the Court concludes the ALJ did not err when he found Plaintiff's testimony as to her physical impairments were not entirely credible because the ALJ gave legally sufficient reasons supported by substantial evidence in the record for doing so.

**B.    Mental impairments.**

The ALJ found Plaintiff's testimony as to her mental impairments was not entirely credible because her mental-health treatment has been conservative.  "Evidence of conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment."  *Parra*, 481 F.3d at 751 (internal quotation omitted).

Conservative treatment of a physical impairment typically consists of over-the-counter medication or physical therapy as opposed to prescription medication or surgery.  *Id*. (over-the-counter medication considered conservative).  *See also Tommasetti v. Astrue*, 533 F.3d 1035, 1040 (9th Cir. 2008) (physical therapy considered conservative).  Conservative treatment of a mental-health impairment, however, is a distinction that is not generally useful, and courts, therefore, have not made such a distinction.

In any event, the record reflects Plaintiff's mental-health symptoms are being treated with prescription medication, including Cymbalta, Celexa, and Wellbutrin.  Tr. 682, 707, 718.

The record also reflects Plaintiff has been receiving counseling
since June 2002. Tr. 212, 804. The ALJ, however, noted
Plaintiff has not consistently complied with her treatment
because she has missed many appointments with her counselors.
Failure to comply with treatment can undermine a claimant's
credibility. *See Bunnell*, 947 F.2d at 346. The record reflects
Plaintiff's positive responses to treatment followed by a failure
to follow treatment are consistent with her type of mental
impairments, and, therefore, Plaintiff's failure to report for
many of her appointments does not necessarily undermine her
credibility. Tr. 243-255, 600-54, 804-901.

The ALJ also found Plaintiff's activities of daily living
were inconsistent with her testimony. Tr. 29. The ALJ may
consider a claimant's activities of daily living in making a
credibility determination. *Bunnell*, 947 F.2d at 346. The ALJ
pointed out that Plaintiff attended school as well as sought and
sustained employment. The record reflects, however, Plaintiff
only was able to work or to attend school under part-time
conditions that allowed her the flexibility to rest as needed.
Even under those circumstances, Plaintiff was unable to sustain
employment for any length of time. Tr. 159-60, 612, 618, 910-14.
For example, Plaintiff took college courses on the Internet
through an employment service and she was not required to attend
any classes in person. Tr. 909. Plaintiff also worked part-time

26  -  OPINION AND ORDER

as a program coordinator for four months in 2004 where she had flexible hours that allowed her to rest as needed.  Tr. 910-11. In addition, she worked for a short time at DePaul Industries, which was a position that she secured through vocational rehabilitation services and that took some of her needs into account.  Tr. 159-60.  On January 13, 2005, she reported to Dr. Hammond that she had been demoted at DePaul Industries because of frequent absences.  Tr. 618.  In March 2005 she worked part-time from her home.  Tr. 612.  Thus, the record reflects Plaintiff's daily activities were not inconsistent with her mental impairments.

On this record, the Court concludes the ALJ erred when he found Plaintiff's testimony and other statements as to her mental-health impairments was not entirely credible because the ALJ failed to give legally sufficient reasons supported by substantial evidence in the record for doing so.

## IV.  Lay-witness testimony.

Plaintiff contends the ALJ erred when he rejected the lay-witness testimony of Plaintiff's friend, Pamela Johnson.  Lay testimony regarding a claimant's symptoms is competent evidence that the ALJ must consider unless he "expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  *See also Merrill ex rel. Merrill v. Apfel*, 224 F.3d

1083, 1085 (9th Cir. 2000)("[A]n ALJ, in determining a claimant's disability, must give full consideration to the testimony of friends and family members.").

On September 30, 2003, Johnson completed a Third Party Adult Function Report regarding Plaintiff in which Johnson stated she sees Plaintiff three or four times a week to visit and to shop. Tr. 136.  Johnson stated Plaintiff does not have "enough energy to complete the day" and must rest often because of her impairments.  Tr. 137.  Johnson also reported Plaintiff cooks her own meals, completes household chores, grooms herself, shops once each week, drives a car, attends church, and goes out daily for short periods.  Tr. 138.  Johnson stated Plaintiff has limitations in lifting, but she did not indicate Plaintiff has any other limitations.  Tr. 141.  Johnson reported Plaintiff can pay attention, follow written and spoken instructions, and gets along well with others.  Tr. 141.

The ALJ found Johnson's statements about Plaintiff's limitations were not entirely credible because they are inconsistent with Plaintiff's activities of daily living.  "The Social Security Act[, however,] does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair*, 885 F.2d at 603.  Activities of daily living, nevertheless, may serve to discredit testimony regarding a claimant's symptoms if the ALJ "makes a specific finding of fact" that the claimant "is able to

spend a substantial part of [her] day engaged in pursuits involving the performance of physical functions that are transferable to a work setting." *Id*. Here the ALJ did not make such a finding.  In addition, even though Johnson enumerated activities engaged in by Plaintiff, Johnson also stated Plaintiff rests often, which is not inconsistent with Plaintiff's daily activities.

The ALJ also found none of the symptoms described by Johnson were attributable to a medically determinable impairment. Tr. 28.  As noted, the ALJ improperly failed to find Plaintiff's mental impairments severe at Step Two.  Johnson's statements that Plaintiff has a difficult time completing the day, must rest often, and some days cannot do anything but rest are consistent with Plaintiff's mental impairments.

On this record, the Court concludes the ALJ erred when he found the statements of Johnson were not entirely credible because the ALJ failed to give legally sufficient reasons germane to this witness for doing so.

**V.    The ALJ's hypothetical to the VE.**

Plaintiff contends the ALJ failed to include all of Plaintiff's limitations in his RFC assessment and, therefore, the ALJ posed an inadequate hypothetical to the VE at Step Four.

Hypotheticals "posed to the vocational expert must set out all the limitations and restrictions of the particular claimant."

*Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).  Here the
ALJ's hypothetical assumed a person of Plaintiff's age and
education with no psychological issues who could occasionally
lift and carry up to 20 pounds; can frequently lift and carry up
to ten pounds; can sit, stand, or walk for about six hours in an
eight-hour workday; and does not have any limitations in pushing
or pulling.  Tr. 932.  The ALJ's hypothetical specifically
excluded any limitation arising from Plaintiff's mental
impairments.  Tr. 932.  As noted, the ALJ failed to give legally
sufficient reasons for rejecting Plaintiff's testimony and other
statements, the lay-witness statements of Johnson, and the
opinions of Drs. Lange and Nicolaidis regarding Plaintiff's
mental impairments and limitations.  Accordingly, the ALJ relied
on a deficient hypothetical to the VE when he determined
Plaintiff is capable of performing her past relevant work and,
therefore, is not disabled and not entitled to benefits.

On this record, the Court concludes the ALJ's hypothetical
to the VE was inadequate because it did not include Plaintiff's
limitations and restrictions arising from Plaintiff's mental
impairments.

## REMAND

The decision whether to remand this case for further
proceedings or for the payment of benefits is a decision within

30  -  OPINION AND ORDER

the discretion of the Court. *Harman*, 211 F.3d 1178.

The decision whether to remand for further proceedings or for immediate payment of benefits generally turns on the likely utility of further proceedings. *Id.* at 1179. The court may "direct an award of benefits where the record has been fully developed and where further administrative proceedings would serve no useful purpose." *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).

The Ninth Circuit has established a three-part test "for determining when evidence should be credited and an immediate award of benefits directed." *Harman*, 211 F.3d at 1178. The court should grant an immediate award of benefits when:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Id.* The second and third prongs of the test often merge into a single question: Whether the ALJ would have to award benefits if the case were remanded for further proceedings. *Id.* at 1178 n.2.

Here the ALJ erred when he failed to provided legally sufficient reasons for finding Plaintiff's mental impairments are not severe. In addition, the ALJ erred when he rejected the opinions of Drs. Lange and Nicolaidis, when he rejected Plaintiff's testimony regarding her mental impairments, and when

31  -  OPINION AND ORDER

he rejected the lay-witness testimony of Pamela Johnson without providing legally sufficient reasons for doing so.  Accordingly, the ALJ's RFC assessment of Plaintiff did not include any limitations arising from Plaintiff's mental impairments, and, therefore, the ALJ did not pose an adequate hypothetical to the VE.  The Court, therefore, concludes on this record that a remand of this matter is necessary for further administrative proceedings consistent with this Opinion and Order.


<u>CONCLUSION</u>

For these reasons, the Court **REVERSES** the decision of the Commissioner and **REMANDS** this matter pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Opinion and Order.

Section 406(b) of the Social Security Act "controls fees for representation [of Social Security claimants] in court." *Gisbrecht v. Barnhart*, 535 U.S. 789, 794 (2002)(citing 20 C.F.R. § 404.1728(a)).  Under 42 U.S.C. § 406(b), "a court may allow 'a reasonable [attorneys'] fee . . . not in excess of 25 percent of the . . . past-due benefits' awarded to the claimant." *Id*. at 795 (quoting 42 U.S.C. § 406(b)(1)(A)).  Because § 406(b) does not provide a time limit for filing applications for attorneys' fees and Federal Rule 54(d)(2)(B) is not practical in the context of Social Security sentence-four remands, Federal Rule of Civil

Procedure 60(b)(6) governs. *Massett v. Astrue*, 04-CV-1006 (Brown, J.)(issued June 30, 2008). *See also McGraw v. Barnhart*, 450 F.3d 493, 505 (10th Cir. 2006). To ensure that any future application for attorneys' fees under § 406(b) is filed "within a reasonable time" as required under Rule 60(b)(6), the Court orders as follows: If the Commissioner finds Plaintiff is disabled on remand and awards Plaintiff past-due benefits and if, as a result, Plaintiff intends to submit such application for attorneys' fees under § 406(b), Plaintiff shall submit any such application within 60 days from receipt of the Notice of Award by the Commissioner.

IT IS SO ORDERED.

DATED this 3rd day of April, 2009.


                                    /s/ Anna J. Brown

                                    _____
                                    ANNA J. BROWN
                                    United States District Judge